[No. 29268. Department One. April 13, 1944.]

LEE McCLURE *et al., Appellants,* v. A. J. STRETCH *et al., Respondents.*[1]

[1]Reported in 147 P. (2d) 935.

*Ross W. Watt,* for appellants.

*Ballinger, Hutson & Boldt,* for respondents.

JEFFERS, J.—This is a libel action instituted in the superior court for King county by Lee McClure and wife against A. J. Stretch and the United Pacific Insurance Company, a corporation, wherein plaintiffs seek to recover damages from defendants because of alleged defamatory statements concerning plaintiff Lee McClure appearing in the complaint in a prior action brought by A. J. Stretch against Lee McClure and Thomas Burroughs.

In view of the fact that the cause is before us on an appeal by plaintiffs from a judgment of dismissal entered after a demurrer to plaintiffs' complaint had been sustained, we shall set out in full the paragraphs of the complaint material to the issues raised on this appeal.

Paragraph 2: "That the defendants *published certain false and defamatory words concerning the plaintiff, Lee McClure,* in the manner following, that is to say: That on the 1st day of April, 1943, the plaintiff, A. J. Stretch, verified a complaint in an action entitled 'A. J. Stretch -vs- Lee McClure and Thomas Burroughs', in an action then pending in the superior court of the state of Washington for King county, and delivered said complaint to his attorneys, who are also the attorneys for the defendant, United Pacific Insurance Company, and placed the same in the hands of the sheriff of Kitsap county on the 12th day of August, 1943, and the said sheriff served the same upon the plaintiffs; that the said complaint, copy of which is hereto attached and marked exhibit 'A' and made a part of this complaint, charges the plaintiff, Lee McClure, with a crime." (Italics ours.)

The material part of the complaint in the case of Stretch v. McClure, referred to as exhibit A, and in which is contained the defamatory words upon which the present action is based, is as follows:

"1. At all times herein mentioned and referred to plaintiff, A. J. Stretch, was the owner of certain premises located at 3621 Airport Way in the city of Seattle, state of Washington.

"2. On or about the 20th day of May, 1941, the defendants, Lee McClure and Thomas Burroughs broke into the above-described premises of the plaintiff and removed therefrom copper tubing belonging to the plaintiff of the value of $74.80 and broke windows of the value of $11.41."

The plaintiff then prayed for judgment for the above amounts.

It is alleged in paragraph 3 of the complaint in the case now before us:

"That in bringing said action, the said A. J. Stretch was acting for and on behalf and at the instigation of the United Pacific Insurance Company, which company had been subrogated to a claim growing out of an alleged loss or damage to certain property owned by him and referred to in said complaint, all of which will more fully appear by reference to two letters written by said company to the plaintiffs on November 27th, 1942, and on December 8th, 1942, copies of which are hereto attached and marked exhibits 'B' and 'C' respectively and made a part hereof."

Paragraph 4: "That the charges made in said complaint and in said letters are wholly and maliciously false and defamatory and were made for the purpose of extorting money from the plaintiffs and injuring them."

Paragraph 5: "That ·the plaintiff, Lee McClure, does not now and has never known any person by the name of Thomas Burroughs, and that at the time of the alleged theft he was a resident of Sedro-Woolley, many miles distant from the city of Seattle and that he has never been in the vicinity where the said premises mentioned in the complaint referred to are located."

Paragraph 6 alleges that plaintiff Lee McClure has suffered great personal embarrassment and mental anguish, and has been exposed to ridicule, as the result of such publications.

The letter of November 27, 1942, referred to in paragraph 3 of the complaint, was written by the United Pacific Insurance Company to Lee McClure, 535 Borseth Avenue, Sedro-Woolley, Washington, and, omitting the formal part, is as follows:

"We refer to an incident which occurred May 20, 1941, at Kirkland, Washington in which a copper tubing dis-

appeared and which we are advised by the prosecuting attorney's office that you are one of the parties who is responsible for this loss.

"We are obliged to pay the amount of $75.70 to replace the copper tubing and feel justified in respectfully requesting that you reimburse us for this amount.

"We attach a self addressed stamped envelope and would appreciate a reply from you by return mail."

Apparently Mrs. Nellie McClure answered the above letter, for on December 8th, the United Pacific wrote Mrs. McClure, Rt. No. 3, Box 55-A, Port Orchard, Washington, as follows:

"Your letter of December 4, 1942 was received by the writer today.

"Your letter was received at such a late date that it would have been impossible for us to accept the appointment suggested in your letter. However, with due regards for rationing etc. at this time we will not be able to have a representative of our company call on you or Mr. McClure.

"In the second place it does not seem that such a call would be in order or necessary. Due to the very nature of this claim, it would appear that it would be very much to Mr. McClure's interest to send us a money order or check by return mail to liquidate this obligation. Unless this is done we shall have no alternative but to refer the matter to our attorneys in Bremerton.

"An immediate reply will be expected to this letter."

In so far as the record shows, no further correspondence took place between the parties.

The complaint in the case of Stretch v. Lee McClure and Thomas Burroughs was sworn to on April 1, 1943, and, according to the allegations of paragraph 2 of the complaint now before us, was placed in the hands of the sheriff of Kitsap county on August 12, 1943, and subsequently served upon plaintiffs. It does not appear that any determination of the Stretch case has been made.

Defendants interposed a demurrer to the complaint in the libel action, on the ground that it failed to state facts sufficient to constitute a cause of action against the defendants, or either of them. The trial court, October 1, 1943, after argument of counsel, sustained the demurrer,

and thereafter on motion of defendants, entered a judgment of dismissal.

Plaintiffs have appealed from the judgment entered, and assign error on the sustaining of the demurrer.

While appellants admit that matters contained in judicial proceedings are privileged, they argue that the privilege is abused when a person proceeds wantonly, recklessly, and without probable cause. This argument is apparently based upon the further statement that this privilege is abused when the claimed defamatory statements are made of and concerning a person who is a stranger to the incidents set forth in the defamatory allegations. This contention must find support, if any there be, in paragraph 5 of the complaint.

It may be admitted that the allegations in the case of Stretch v. McClure charge the defendants therein with a crime, but it requires only a cursory examination of that complaint to show that the allegations therein contained not only had "some relation" to the subject matter of the litigation, but that they constitute the very essence of the cause of action therein set forth.

It is also apparent from the letters above set out and the subsequent service of the summons and complaint in the Stretch case upon appellant Lee McClure, that it was the intention of the plaintiff in the Stretch case to make Lee McClure a defendant in that case.

While appellant contends he was a stranger to the incidents set out in the Stretch case, he specifically alleges in the complaint now before us that the respondents "published certain false and defamatory words concerning the plaintiff, Lee McClure." It is nowhere alleged in the complaint now before us that the Lee McClure who was defendant in the Stretch case was not the same person as the Lee McClure who is plaintiff in the instant case, nor is it alleged that the court in which the Stretch case was commenced was not a court having jurisdiction to hear and determine that action.

We think it might be well at this time to refer to a statement made in the early case of *Abbott v. National Bank*

*of Commerce,* 20 Wash. 552, 56 Pac. 376, as it not only states the general rule relative to statements and allegations made in judicial proceedings, but also gives the reason therefor.

"We think it requires no argument to demonstrate that the words complained of were pertinent and material to the cause, and the question to be determined is, Were they *absolutely privileged, regardless of whether they were true or false, used maliciously or in good faith?* The doctrine of privileged communications rests upon public policy, 'which looks to the free and unfettered administration of justice, though, as an incidental result, it may, in some instances, afford an immunity to the evil-disposed and malignant slanderer.' *Bartlett v. Christhilf,* 69 Md. 219 (14 Atl. 518). It cannot be doubted that it is a privilege liable to be abused, and its abuse may lead to great hardships; but to give legal sanction to such suits as the present would, we think, give rise to far greater hardships. The rule is tersely stated in *Wilson v. Sullivan,* 81 Ga. 238 (7 S. E. 274) as follows:

" 'All charges, allegations and averments contained in regular pleadings addressed to and filed in a court of competent jurisdiction, which are pertinent and material to the redress or relief sought, whether legally sufficient to obtain it or not, *are absolutely privileged.*' " (Italics ours.)

We then quoted from *Hoar v. Wood,* 3 Metc. 193:

" 'Then we take the rule to be well settled by the authorities, that words spoken in the course of judicial proceedings, though they are such as impute crime to another, and therefore if spoken elsewhere, would import malice and be actionable in themselves, *are not actionable, if they are applicable and pertinent to the subject of inquiry.* The question, therefore, in such cases is not whether the words spoken are true, not whether they are actionable in themselves, *but whether they were spoken* in the course of judicial proceedings, and whether they were relevant and pertinent to the cause or subject of inquiry.' " (Italics ours.)

*Abbott v. Thorne,* 34 Wash. 692, 76 Pac. 302, 101 Am. St. 1021, 65 L. R. A. 826, quotes with approval the rule announced in *Abbott v. National Bank of Commerce, supra.* While the cited case was one based upon an alleged con-

spiracy to maliciously prosecute, we stated that the principle involved was the same as that involved in *Abbott v. National Bank of Commerce.* We desire to call particular attention to a quotation in the cited case taken from *Seattle Crockery Co. v. Haley,* 6 Wash. 302, 33 Pac. 650, 36 Am. St. 156.

It seems to us that, under the rule announced in *Miller v. Gust,* 71 Wash. 139, 127 Pac. 845, the only issuable fact to be decided in the instant case, under the allegations of the complaint, is whether or not the allegations contained in the case of Stretch v. Lee McClure and Thomas Burroughs were relevant and pertinent to the cause of action therein stated, or, as more recently stated in the case of *Johnston v. Schlarb,* 7 Wn. (2d) 528, 110 P. (2d) 190, 134 A. L. R. 474, "had 'some relation' thereto and some 'bearing upon the subject matter of the litigation.' " The opinion in the case of *Miller v. Gust, supra,* concludes with these words:

"The complaint before us does not charge that the allegations complained of, as found either in the offending complaint or in the affidavit, were not relevant and pertinent to the cause or subject there under inquiry. The very nature of that action invites the presumption that they were relevant and pertinent. *Their relevancy and pertinency in that case constitute the one dominant, issuable fact in this case; not the truth, falsity, or maliciousness of the words.* That dominant issue was not tendered by the complaint here involved. The demurrer admitted the truth only of the *material* allegations of the complaint. It did not admit the allegations of malice and falsehood, which were wholly immaterial without the further allegation of facts showing irrelevancy and impertinence." (Italics ours.)

We desire to call attention to the case of *Johnston v. Schlarb, supra,* for it seems to have somewhat broadened the rule theretofore announced by this court. The rule announced in the cited case is based upon the following statements found in Restatement of the Law of Torts, § 587:

"A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of a judicial proceeding in which he participates, *if the matter has some relation thereto.*" (Italics ours.)

Section 587, *id.,* comment (c):

"It is not necessary that the defamatory matter be relevant or material to any issue before the court. It is enough that it have some reference to the subject of the inquiry. Thus, while a party may not introduce into his pleadings defamatory matter which is entirely disconnected with the litigation, he is not answerable for defamatory matter volunteered or included by way of surplusage in his pleadings *if it has any bearing upon the subject matter of the litigation.*" (Italics ours.)

Under the rules hereinbefore announced, the demurrer in the instant case does not admit the falsity or maliciousness of the allegations contained in the Stretch complaint. The allegations contained in paragraph 5 of the complaint now before us at most constitute nothing more than a denial of the truth of the allegations contained in the Stretch complaint, and, even if it should be established by appellant that he was not in fact connected with the incidents set out in that complaint, such fact could not form the basis for this action, because the allegations therein contained were made in a judicial proceeding, and were relevant and pertinent to the cause of action therein stated, and hence absolutely privileged.

We again call attention to the case of *Abbott v. Thorne, supra.* The basis of the cited case was certain claimed malicious allegations made in the prior case of " *'William H. Opie, as Administrator, Respondent, v. Pacific Investment Co. et al., Appellants,'* reported in 26 Wash. 505, 67 Pac. 231, 56 L. R. A. 778," which allegations were found by the court in the case last mentioned not to be true. We held, however, that the rule of absolute privilege applied.

We have examined the authorities cited by appellants,

and we are of the opinion they are not applicable to the facts as stated in the complaint.

■ Appellants call our attention to 36 C. J. 1242, § 207. This citation is found under the general heading of "Qualified Privilege." It may be admitted that, in cases of qualifiedly privileged communications, the law requires both an occasion of privilege and the use of that occasion in good faith; where, however, the words complained of are absolutely privileged, the question of good faith is not an issue. *Abbott v. National Bank of Commerce, supra.*

*Coombs v. Rose,* 8 Blackford (Ind.) 155 (170), cited by appellants, involved an accusation made by a member of a church, in the regular course of church discipline, against a person not a member, and it was held that as to such person such statements did not constitute privileged communications.

*Robinett v. Ruby,* 13 Md. 95, involved a statement made by defendant in regard to the plaintiff outside of court, and it was held that the defendant was not privileged in making this charge.

The case of *Moore v. Manufacturers' Nat. Bank,* 123 N. Y. 420, 25 N. E. 1048, 11 L. R. A. 753, was concerned with certain statements made about the teller of the bank. The court held that the statements were not relevant or pertinent to the issues of the case, which was one against the bond of the cashier of the bank to recover for alleged defalcations. The court recognized the general rule in regard to communications which are absolutely privileged, but held that, in so far as the teller was concerned, the communication was only qualifiedly privileged. We quote from the cited case:

"Both occasions on which the publication in this case was made were privileged, that is to say it was the right of the sureties to receive, and it was the reasonable duty of the defendants to give all proper information bearing upon the claim made by the bank against the sureties. The occasion, therefore, justified the bank in disclosing the facts relating to the alleged defalcation of the cashier, *and even if the bank was misinformed, and there had been no defalcation in fact, such information was privi-*

*leged,* and the cashier could have maintained no action unless, perhaps, in respect to the first publication on proof of actual malice. But the incorporation into the publication of the statement that the teller acted in collusion with the cashier was, so far as appears, wholly irrelevant and unnecessary. The teller was not a party to the bond or to the suit. There was no issue which called for an investigation of the teller's conduct. . . . The information did not on its face explain, or tend to explain or establish any fact relevant to the defendants' case against the sureties, nor can it be seen how knowledge of the fact communicated would be of advantage to the sureties." (Italics ours.)

Appellants also quote from *Harshaw v. Harshaw,* 220 N. C. 145, 16 S. E. (2d) 666, 136 A. L. R. 1411, as follows:

"Undoubtedly, the general rule is that pleadings are privileged when pertinent and relevant to the subject under judicial inquiry, . . ."

the statement continuing: "however false and malicious the defamatory statements may be." While the above quotation is correctly stated, it does not, in our opinion, support the following statement contained in appellants' brief:

"We urge that the statements in the case now before the court were not pertinent and relevant, in that they were uttered about a stranger to the matter which formed the basis of the charge; McClure was not related to those charges in any way, and so the facts were utterly irrelevant as to him."

The reason for the holding in the *Harshaw* case, *supra,* that the rule as to absolute privilege did not apply, is shown by the following statement in 136 A. L. R., at p. 1411:

"1. Absolute privilege may not be successfully invoked by defendant in a libel action, as regards allegations of pleadings in a judicial proceeding to the effect that one claiming as widow of decedent was not lawfully married to him and that her children were illegitimate, *where in an earlier judicial proceeding involving the same parties, a judgment was entered by agreement establishing plaintiff's status as widow and the legitimacy of the children,*

*since the defendants were estopped by the judgment, and the defamatory matter set up in the pleadings complained of was not relevant."* (Italics ours.)

It is not shown by the complaint in the instant case, nor is it argued by appellants, that there is any basis for a claim of estoppel against respondents.

We are satisfied that, under the facts shown by the complaint, which the demurrer admits, it must be held that the allegations contained in the complaint in the case of Stretch v. Lee McClure *et al.*, were absolutely privileged, and form no basis for this libel action.

The judgment of the trial court is affirmed.

SIMPSON, C. J., BEALS, STEINERT, and GRADY, JJ., concur.

[1]Reported in 147 P. (2d) 912.